UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
                          :

UNITED STATES OF AMERICA         :     07 Cr. 913 (KMK)

       - against -                        :

PHILIP ETKIN,                        :
                 Defendant.   :

----------------------------------------------------------------x

## MEMORANDUM OF LAW IN SUPPORT
## OF PRETRIAL MOTION

### FACTS

On September 27, 2007, a Grand Jury returned an indictment charging the defendant, Philip Etkin, with one count of extortion in violation of Title 18, United States Code, Section 1951.

The defendant was arrested by a team of agents from the Federal Bureau of Investigation on September 28, 2007. At the time of his arrest the defendant was driving a vehicle that had been assigned to him by the New York State Police. The defendant was employed as a Deputy Sheriff with the Sullivan County Sheriff's Department and assigned as an Investigator to a New York State Police Task Force at all times relevant to this prosecution and motion.

After the defendant's arrest, the defendant and counsel were provided with discovery consisting, in part, of documents seized from the defendant's vehicle at the time of his arrest as well as documents seized from his desk at the Sheriff's Department.

Among other material contained in the government's discovery was a two-page document that is an email communication from the defendant's wife to him on March 13, 2007 and his wife's email response. (See Affirmation of Philip Etkin and attached email communication).

1

On October 31, 2007, the government was advised that the defendant objected to the government's possession and use of the email and was asked that any copies of the email in the government's possession be returned. The government was also asked to identify who had reviewed the communication and what use had been made of the email. (See letter dated October 31, 2007 attached to Affirmation of Kerry A. Lawrence). The government refused to return the email or answer counsel's inquiry as to the use that had been made of the email.

Recently government counsel was asked if the government still intended to use the email in the prosecution of the defendant and counsel was advised that the government in fact intended to do so, and that the government considered the email as providing evidence of the defendant's "intent." The element of intent is the critical issue in this case.

## ARGUMENT

### THE MARCH 13, 2007 EMAIL COMMUNICATIONS BETWEEN THE DEFENDANT AND HIS WIFE ARE PRIVILEGED AND SHOULD NOT BE USED AS EVIDENCE AGAINST THE DEFENDANT IN THIS CASE.

Private communications between a husband and wife are privileged and this privilege has been described by the United States Supreme Court as "the best solace of human existence." Trammel v. United States, 445 U.S. 40, 51 (1980). The Second Circuit Court of Appeals has referred to the marital communication privilege as "venerated." Grand Jury Subpoena of Ford v. United States, 756 F.2d 249, 252 (2d Cir. 1985). Marital confidences are considered "so essential to the preservation of the marriage relationship as to outweigh the disadvantages to the administration of justice which the privilege entails." Wolfle v. United States, 291 U.S. 7, 14 (1934).

2

The email communications between the defendant and his wife are clearly private in nature and there is no evidence that the defendant or his wife ever did anything to waive that privilege or expose the communication to a third-party or the public. The communication should not have been reviewed by the government and should not be used in the prosecution of the defendant in this case.

## THE PROSECUTION TEAM INTENTIONALLY INVADED AND VIOLATED THE DEFENDANT'S MARITAL PRIVILEGE.

Government counsel was advised almost immediately upon receipt of discovery by the defendant that a marital privilege was being raised in relation to the March 13, 2007 email between the defendant and his wife. In a conversation with government counsel and then in a letter dated October 31, 2007 the government was advised to return all retained copies of the email and identify who had reviewed the email and what use had been made of it. The government declined to return the email and also refused to identify what use it had made of the email.

Just recently government counsel advised counsel that it intended to use the privileged confidential communication against the defendant and considered it as evidence of "intent."

## ALTERNATIVE INVESTIGATIVE MEASURES WERE AVAILABLE TO THE GOVERNMENT THAT COULD HAVE PREVENTED THE VIOLATION OF THE DEFENDANT'S PRIVILEGE.

It had to have been readily apparent to government counsel and the prosecution team that the email communication that is at issue was a communication between the defendant and his wife. (See email attached to the Etkin Affirmation). The government could have created a "firewall" to review the seized documents to determine whether there were any privileged communications among the

seized documents. The government failed to do so. The government could have advised counsel that a communication between the defendant and his wife had been seized and inquired as to whether a privilege was being asserted prior to reading it. The government did not chose to do so. Other measures have been taken by the government in other cases to minimize the possibility of being exposed to privileged communications.[1] See e.g., National City Trading Corp. v. United States, 635 F.2d 1020, 1026 (2d Cir. 1980) (agent did not search legal files until lawyer present to monitor and ask that privileged files be sealed); In Re Grand Jury Subpoenas Dated December 10, 1987, 926 F.2d 847, 858 (9th Cir. 1991) (agents held up search of law firm until lawyers and United States Attorney's Office negotiated best way to proceed and law firm personnel searched files for privileged materials). Finally, a special master could have been appointed to work with the parties to protect both the defendant's interest in protecting his privilege and the Government's interest in obtaining evidence it believed it was entitled to. United States v. Lynne Stewart, 2002 WL 1300059 (S.D.N.Y. June 11, 2002)(J. Koeltl). Having chosen to police itself in the review of the seized documents, the government operated at its own peril in the event the procedure it chose to follow failed.[2] Additionally, the government apparently does not claim that the email does not contain a privileged

---

[1] The cases cited herein relate to cases where the privilege at issue was the attorney-client privilege. The fact that the privilege at issue in this motion is the marital privilege does not change the analysis.

[2] Even if the government had chosen to utilize a firewall, at least three District Court Judges in this District have disapproved of the Government's use of a firewall to protect attorney-client or work-product privileges. See United States v. Kaplan, 2003 WL 22880914 at *12 (S.D.N.Y. December 5, 2003), where Judge Batts found that firewalls are not appropriate because "potentially privileged materials are turned over to the trial team and case agents before any challenge to those determinations can be raised by a Defendant and determined by a court." See also, United States v. Lynne Stewart, supra, at *7-*10 (J. Koeltl); In re Search Warrant for Law Offices Executed on March 19, 1992, 153 F.R.D. 55, 59 (S.D.N.Y. 1994) (J. Brieant).

marital communication, but rather, that the privilege was waived. By cavalierly relying on a waiver argument, the government also operated at its own peril in the event its claim of waiver is deemed wrong.

### AN EVIDENTIARY HEARING IS REQUIRED TO DETERMINE WHICH MEMBERS OF THE PROSECUTION TEAM HAVE BEEN EXPOSED TO PRIVILEGED MATERIALS AND WHAT THE COURT SHOULD DO TO REMEDY THE VIOLATION.

Because the government has conceded that the prosecution team has been exposed to privileged materials, the burden of proof is on the government to show an absence of taint and that the further prosecution of defendant by the current prosecution team is proceeding wholly independent of anything learned from being exposed to privilege material. Kastigar v. United States, 406 U.S. 441, 460 (1972).

This "heavy burden" cannot be satisfied by the prosecution merely by claiming that the information it viewed will not be used -- the government will have to demonstrate that the privileged material could not have altered the manner in which the defendant is prosecuted. See e.g., United States v. Kristel, 762 F. Supp. 1100 (S.D.N.Y. 1991)(J. Brieant). See also, United States v. Warshak, 2007 WL 2417407 (S.D. Ohio 2007). In this case, the government is not even claiming it will not use the privileged materials. Rather, the government has stated its intent to use the information and that it considers the information evidence of "intent," a vital issue in this case.

Although the above-referenced cases involved the government's exposure to immunized testimony, and not the government's exposure to materials protected by the marital privilege, the analysis that resulted in the burden being placed on the government to show an absence of taint is

the same here. The issues raised in this motion, like the issues raised in <u>Kastigar</u> and its progeny, pertain to alleged deprivations of the defendant's constitutional rights in a criminal prosecution -- violations that were occasioned by the government's actions.

In <u>United States v. Schwimmer</u>, the Second Circuit recognized that the government's direct or indirect use of attorney-client privileged information is forbidden, in the same way that the use of immunized testimony is forbidden. <u>United States v. Schwimmer</u>, 892 F.2d 237, 244 (2d Cir. 1989) (protection applies "regardless of the manner in which it is sought to put the communication in evidence, whether by direct examination, cross-examination, or indirectly as by bringing out facts brought to knowledge solely by reason of a confidential communication"); <u>accord</u>, <u>United States v. Weissman</u>, 1996 WL 751386, at *5-9 (S.D.N.Y. 1996), <u>aff'd</u>, 195 F.3d 96 (2d Cir. 1999). The court ordered the district court to conduct "an evidentiary hearing to determine whether the government's case was in any respect derived from a violation of the attorney-client privilege, ... and, in the event of an affirmative finding, a determination as to what use was made of the derivative information and whether a substantial right of the appellant was affected." <u>Id</u>. at 245. On appeal after remand, the <u>Schwimmer</u> court stated that the "government must demonstrate the evidence it uses to prosecute an individual was derived from legitimate, independent sources." <u>United States v. Schwimmer</u>, 924 F.2d 443, 446 (2d Cir.) (citing <u>Kastigar v. United States</u>, 406 U.S. 441, 461-62 (1972)), <u>cert. denied</u>, 502 U.S. 810 (1991)).

There is precedent in this Circuit for the proposition that when prosecutors intentionally intrude into the attorney-client "domain," dismissal of an indictment is appropriate under the broad heading of "governmental misconduct," if the government's conduct has been manifestly and avowedly corrupt or if the defendant can "show prejudice to his case resulting from the intentional

6

invasion of the attorney-client privilege." United States v. Schwimmer, 924 F.2d at 446-47; United States v. Weissman, 1996 WL 751386 at *12. The defense is not aware of any facts or information suggesting that the government's conduct here was corrupt. Additionally, the issue in this case relates to marital privilege, not attorney-client privilege, although this distinction should not alter the analysis. However, the government did intentionally intrude into the marital privilege "domain," and the defendant has been prejudiced thereby. While it is unknown at present exactly what use the government made of the confidential communication, the government has stated it intends to use the privileged communication against him in this case.

In this case it appears that the government intentionally looked at privileged documents. Because the government's acts here were egregious, the remedy sought is dismissal of the indictment. In cases where the government intentionally acts to violate a criminal defendant's privileges some courts have adopted a *per se* rule that results in a dismissal of charges even absent a showing of prejudice. See, e.g., United States v. Gartner, 518 F.2d 633, 637 (2d Cir.), cert. denied, 423 U.S. 915 (1975).

After a hearing, if it appears that the prosecution team has been tainted by having viewed privileged documents but that the conduct was not sufficiently egregious to warrant a dismissal of the charge, the only solution will be to remove any tainted agents and prosecutors from the prosecution team and replace them with personnel that have not been tainted.

We have been unable to find a case directly on point to the facts that have arisen here that gave rise to the disqualification of members of the prosecution team, although courts have disqualified prosecutors under similar circumstances. See, United States v. Horn, 811 F. Supp. 739, 753 (D. N.H. 1992)(prosecutor reviewed set of documents which he knew defense counsel needed

7

for cross-examination, preparation of defense witnesses, and for use in connection with trial tactics and strategy), rev'd in part on other grounds, 29 F.3d 754 (1st Cir. 1994); United States v. (Under Seal), 757 F.2d 600 (4th Cir. 1985)(prosecutor disqualified who had access to documents containing privileged communications between defendants and their counsel; government's challenge to disqualification order on appeal deemed moot).

## CONCLUSION

Based on the foregoing, it is respectfully requested that the Court conduct an evidentiary hearing at which the government be required to demonstrate what use it has made of improperly reviewed privileged communications. Depending on what is adduced at a hearing, the Court should consider dismissing the indictment, disqualification of the prosecution team, and preclusion of use of the marital communication during the trial of this case.

DATED:    White Plains, New York
          December 10, 2007

Respectfully submitted,

BRICCETTI, CALHOUN & LAWRENCE, LLP

By: /s/ Kerry A. Lawrence
Kerry A. Lawrence
81 Main Street, Suite 450
White Plains, NY 10601
(914) 946-5900

ATTORNEYS FOR DEFENDANT
Philip Etkin