UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA | Case No. 07-CR-913 (KMK) |
| v. | OPINION & ORDER |
| PHILIP ETKIN, Defendant. | |

Appearances:

John P. Collins, Jr., Esq.
Assistant United States Attorney
Southern District of New York
White Plains, New York

Kerry A. Lawrence, Esq.
Briccetti, Calhoun & Lawrence
White Plains, New York
*Counsel for Defendant*

KENNETH M. KARAS, District Judge:

Before the Court is Defendant Philip Etkin's Pretrial Motion dated December 10, 2007, which seeks to preclude introduction at trial of a printed email communication between Defendant and his wife. The email was seized from the vehicle Defendant was driving at the time of his arrest. The Government has indicated that it may seek to introduce a portion of this email at trial as evidence of Defendant's intent. Defendant argues that this email is a privileged marital communication and, therefore, this Court should preclude its use at trial and require the Government to return it to Defendant. Beyond this, Defendant seeks an evidentiary hearing at which the Government would be required to demonstrate that taint did not result from its exposure to the allegedly privileged communication. According to Defendant, such a hearing

would enable the Court to determine if the prosecution team should be disqualified.[1]  The Court

held oral argument on February 8, 2008.  For the reasons stated herein, Defendant's Motion is

DENIED.

## I. Background

Following a Grand Jury Indictment for extortion in violation of the Hobbs Act, 18 U.S.C.

§ 1951, Defendant Philip Etkin, former Deputy Sheriff in the Sullivan County Sheriff's

Department and investigator in the New York State Police ("NYSP") Task Force, was arrested

on September 28, 2007 by Federal Bureau of Investigation ("FBI") agents.  At the time of his

arrest, Defendant was in a vehicle assigned to him by the NYSP.  Among the items seized from

the vehicle was a printed email exchange between Defendant and his wife dated March 13, 2007.

The email was found in an open portfolio bag that also contained file folders filled with

investigative notes and other work materials.  The Government provided this email to

Defendant's counsel in discovery on October 12, 2007.  On October 31, 2007, Defendant's

counsel notified the Government by letter of Defendant's objection to the Government's

possession and use of the email on the ground that the email was protected by the marital

privilege.[2]  The Government's refusal to return the email and expressed intention to use the

---

[1]Defendant initially also argued that the Government's violation of his marital privilege required dismissal of the Indictment, but he has since withdrawn this argument.  (Def.'s Reply Mem. of Law in Supp. of Pretrial Mot. 5 ("Def.'s Reply").)

[2]In Defendant's Motion papers, the prosecution team is accused of "intentionally invad[ing] and violat[ing] the Defendant's marital privilege."  (Def.'s Mem. of Law in Supp. of Pretrial Mot. 3 ("Def.'s Mem.").)  Further, Defendant suggests that the Government's actions in connection with the email communication were somehow improper and egregious.  (*Id*. 3-4, 7.)  The Court finds no evidence in the record whatsoever to suggest that the Government's actions were improper or motivated by bad faith.

email at trial has prompted the present Motion.[3]

## II. Discussion

### A. Standard of Review

In *Wolfle v. United States*, the Supreme Court held:

> The basis of the immunity given to communications between husband and wife is the protection of marital confidences, regarded as so essential to the preservation of the marriage relationship as to outweigh the disadvantages to the administration of justice which the privilege entails. . . . Communications between the spouses, privately made, are generally assumed to have been intended to be confidential, and hence they are privileged; but wherever a communication, because of its nature or the circumstances under which it was made, was obviously not intended to be confidential it is not a privileged communication. And, when made in the presence of a third party, such communications are usually regarded as not privileged because not made in confidence.

291 U.S. 7, 14 (1934) (citations omitted). Because the marital privilege deprives fact-finders of

---

[3]The Government believes that the following text from Defendant's email to his wife is evidence of Defendant's intent to commit extortion:

> Also on another note, i [sic] finally got "T" last night. Hes [sic] now in jail for parole violation. I had a talk with him last night and told him to deliver by no later than March 31, a brand new PSP to the Sheriff Dept. He's facing a parole hearing on 4/6, and if he doesnt [sic] come through, he's done and will go by by [sic] for 3 yrs on parole violation alone. Lets [sic] see what happens. dont [sic] tell evan, just in case it doesnt [sic] come through, but im [sic] sure it will.

(Attachment to Affirmation in Supp. of Pre-Trial Mot. by Philip Etkin.) For purposes of the present Motion, the Court is concerned only with whether the email is protected by the marital communications privilege. Therefore, at this time, the Court makes no determination as to the relevance or admissibility of the email.

Based on the Government's representation that it will not seek to use at trial any portion of the email from Defendant's wife to Defendant, the Court does not decide whether that email is protected by the marital communications privilege.

potentially useful information, the party seeking to invoke the privilege bears the burden of establishing that there existed a valid marriage at the time of the communication. *See In re Witness Before the Grand Jury*, 791 F.2d 234, 237 (2d Cir. 1986).

B. Analysis

In opposition to Defendant's Motion, the Government argues that the email between Defendant and his wife is not protected by the marital communications privilege because of each of the following independent reasons: "(1) the Etkins were separated at the time of the email; (2) the email was not a confidential communication; and (3) assuming that the email was a privileged communication at the time of its creation, the privilege has since been waived." (Government's Mem. of Law in Opp'n to Def.'s Mot. to Preclude the Government from Introducing into Evidence an Email Sent by the Defendant to his Wife and for a Taint Hearing 2-3 ("Gov't's Opp'n").)  The Court will address each of these arguments in turn.

1. Separation

The Government argues that the email communication at issue took place during a time when Defendant and his wife were permanently separated.  According to the Government, the Etkins' separation is evidenced by the following:  (1) One of the FBI agents who investigated the charges against Defendant spoke with one of Defendant's former colleagues from the Sheriff's Department, who indicated his belief, based on a conversation with another of Defendant's then-colleagues, that Defendant and his wife had been separated since at least September 2006, (Gov't's Opp'n 6 & Ex. A; Decl. of Vincent Presutti dated January 7, 2008, ¶ 2 ("Presutti's First Decl.")); (2) Defendant submitted a memorandum to the NYSP dated March 19, 2007, notifying it of a temporary address – not his marital residence – where his assigned police vehicle would

4

be parked at night, (Gov't Opp'n 6 & Ex. D); and (3) the content of the email at issue indicates

a marital separation, (Gov't Opp'n 6 n.2).  Defendant vehemently denies the Government's

assertion that he and his wife are separated, rebuffing Agent Presutti's Declaration as triple

hearsay.[4]  (Def.'s Reply 1).

The Second Circuit, like many other circuits, has adopted the view that permanent

separation vitiates the marital communications privilege because "'society's interest in

protecting the confidentiality of the relationships of permanently separated spouses is

outweighed by the need to secure evidence in the search for truth.'"  *Witness Before the Grand*

*Jury*, 791 F.2d at 238 (quoting *United States v. Byrd*, 750 F.2d 585, 594 (7th Cir. 1984)); *see*

*also United States v. Singleton*, 260 F.3d 1295, 1299-1300 (11th Cir. 2001) (collecting cases and

---

[4]In his Reply Affirmation, Defendant declared, under penalty of perjury, the following:

> 1. From the time I communicated with my wife Bess via email on March 13, 2007 up through and including the date of my arrest on September 28, 2007, I was not permanently separated from my wife.
> 2. Neither I nor my wife Bess has at any time filed for divorce and do not intend to [sic].
> 3. It was my intent on March 13, 2007 and continues to be my intent to reconcile my marriage with Bess and I hope to be able to live with her and my children.
> 4. Neither Bess nor I have proposed any property settlement and I did not consider on March 13 nor do I now consider our marriage to be irretrievably broken.
> 5. While at times since October, 2006, I have slept at my parents home and at a residence in Roscoe, New York I have at all times remained in communication with Bess, would see her and speak to her on a daily basis and continued to do so up through the date of my arrest in this case.

(Philip Etkin's Reply Affirmation in Supp. of Pre-Trial Mot. ¶¶ 1-5 ("Etkin Reply Affirm.").) Defendant, however, submitted no affidavit from his wife confirming any of his hopeful assertions about his marriage.

concluding, "[w]e agree with the other circuits which have determined that the [marital communications] privilege is not available when the parties are permanently separated; that is, living separately with no reasonable expectation of reconciliation"). To determine whether a couple is permanently separated, the court "may rely primarily on the duration of the couple's physical estrangement," while also considering "special circumstances that render more or less likely the objective possibility of reconciliation at the time of the communications, upon which the couple may have relied." *Witness Before the Grand Jury*, 791 F.2d at 238.

Thus, if Defendant and his wife were permanently separated at the time of their email exchange on March 13, 2007, the marital communications privilege will not apply. The Court, however, finds that there is insufficient proof that Defendant and his wife were permanently separated at the time of the email communication. Though the Government's evidence suggests that this may have been the case, the evidence presented is not sufficient for the Court to comfortably conclude that Defendant and his wife were physically estranged for a sufficient period of time with no intention of reconciliation, especially in the face of Defendant's sworn statements to the contrary. While the Court notes the absence of any indication from Defendant's wife that she shares Defendant's optimism about their marriage, the Court is willing to assume, based on Defendant's Affirmation, that Defendant's marriage, though struggling, is not over. The email therefore is subject to a presumption of confidentiality as a communication between spouses to a valid marriage.

2. Confidentiality

Where marital communications are "made in the presence of a third party, such communications are usually regarded as not privileged because not made in confidence."

*Wolfle*, 291 U.S. at 14; *accord Witness Before the Grand Jury*, 791 F.2d at 239 ("Although 'communications' between spouses are presumed to be confidential, this presumption is rebutted when the communicant knew that the information was or would be disclosed to third parties or to the public." (citation omitted)).  Though it must be determined on a case-by-case basis, "an employee's expectation of privacy in the content of offices, desks, and files may be reduced by an employer's practices, procedures, and legitimate regulation over the use of the employer's property."  *United States v. Bailey*, 272 F. Supp. 2d 822, 835 (D. Neb. 2003) (citing *O'Connor v. Ortega*, 480 U.S. 709, 717 (1987)).

The Government argues that the email did not constitute confidential communication because Defendant sent the email from his work computer, which was owned by the NYSP and which explicitly warned Defendant that his uses of the computer were subject to monitoring by the NYSP.  The following flash-screen notice appeared each time Defendant logged onto his work computer:

> For authorized use only.  The system and all data are the property of the New York State Police. . . . Any use of the NYSP computer systems constitutes express consent for the authorized personnel to monitor, intercept, record, read, copy, access and capture such information for use or disclosure without additional prior notice. Users have no legitimate expectation of privacy during any use of this system or in any data on this system.  Your access may be logged at any time.  By logging into this system, you are agreeing that you have read, and accepted the above terms and conditions.

(Presutti's First Decl. ¶ 5; Gov't's Opp'n, Ex. B; Decl. of Vincent Presutti dated January 17, 2008, ¶¶ 5-6 & Exs. B, C ("Presutti's Second Decl.").)  In order to continue past the notice and complete the log on process, Defendant had to click "OK" or hit the "Enter" key.  (Presutti's Second Decl. ¶ 7.)  Defendant would occasionally use a different work computer, which

provided the same notice in substance, but had a different final sentence, which read: "If you DO NOT consent to the above do not continue the boot-up process and refrain from further access." (*Id.* ¶ 8 & Ex. D.)  Again, in order to continue the log on process, Defendant would have to click "OK" or hit the "Enter" key.  (*Id.* ¶ 8.)  According to the Government, Defendant cannot be deemed to have intended for his email exchange with his wife to be confidential because these warnings expressly notified him that it was subject to review by a third person.[5]

Defendant argues that the email exchange between him and his wife was confidential because Defendant did not intend to waive any marital communications privilege by using his work computer.  (Def.'s Reply 2.)  In an effort to further support this argument, Defendant finds it relevant that he was never verbally advised that his use of the computer was subject to monitoring and that the Government failed to offer evidence that the NYSP actually did monitor Defendant's email.  (*Id.*)  Instead, Defendant accuses the Government of attempting to employ an "after-the-fact justification" for its intrusion into privileged material.  (*Id.*)  Defendant also claims never to have read the computer notices, thereby making them ineffective as a means of rebutting the presumption that the email between Defendant and his wife was confidential.

---

[5]The Government relies on three cases, *United States v. Griffin*, 440 F.3d 1138 (9th Cir. 2006)*, United States v. Madoch*, 149 F.3d 596 (7th Cir. 1998), and *United States v. Harrelson*, 754 F.2d 1153 (5th Cir. 1985), each of which involve marital communications that took place while one of the spouses was incarcerated.  In all three cases, the courts held that the marital communications were not confidential because the parties knew that their communications were subject to eavesdropping and monitoring by prison officials and even other inmates.  Though not factually on point, the Court is persuaded by the underlying message in these cases:  there can no confidential communication where the spouses are on actual or constructive notice that their communications may be overheard, read, or otherwise monitored by third parties.

(*Id.* 3; Etkin Reply Affirm. ¶ 6.)[6]

The Court is persuaded by the rationale underlying the cases of *United States v. Angevine*, 281 F.3d 1130 (10th Cir. 2002), *Haynes v. Attorney General of Kansas*, No. 03-CV-4209, 2005 WL 2704956 (D. Kan. 2005), and *United States v. Bailey*, 272 F. Supp. 2d 822 (D. Neb. 2003), each dealing with an employee's Fourth Amendment rights in the privacy of a workplace computer. These cases stand for the proposition that employees do not have a reasonable expectation of privacy in the contents of their work computers when their employers communicate to them via a flash-screen warning a policy under which the employer may monitor or inspect the computers at any time. *See Angevine*, 281 F.3d at 1132, 1135 (holding professor

---

[6]Defendant relies on *In re Asia Global Crossing, Ltd.*, 322 B.R. 247 (Bankr. S.D.N.Y. 2005), for the proposition that "even in a case where there were rules prohibiting personal use of the network and there were warnings and notices of an employer's right to monitor, the Court could not conclude as a matter of law that use of the company's email system to communicate with a personal attorney eliminated any otherwise existing privilege." (Def.'s Reply 2-3.) In *Asia Global Crossing*, the court held that "[a]ssuming a communication is otherwise privileged, the use of the company's e-mail system does not, *without more*, destroy the [attorney-client] privilege." 322 B.R. at 251 (emphasis added). In *Asia Global Crossing*, the court was unwilling, based on the evidence before it, to find that the attorney-client privilege was compromised based on one party's representation that there existed a corporate policy against using the company email system to submit confidential information because it was unclear that the policy existed or that it was ever communicated to the employees. *See id.* at 259 ("The evidence is equivocal regarding the existence or notice of corporate policies banning certain uses or monitoring employee e-mails.").

However, the *Asia Global Crossing* court went on to provide an example of when employees would be on notice of such a corporate email policy – an example that is right on par with the present case. *See id.* at 261 ("[F]ailure to warn the employees of an existing e-mail policy does not necessarily mean that the employees . . . were not on notice of the e-mail policy. For example, at log on, some business computers, including those used by the Court's personnel, warn users about personal use and the employers' right to monitor. In some cases, the user actually consents to the limits, or is advised that by continuing to use the system, he will be deemed to have consented to the restrictions."). Therefore, while the operative facts of *Asia Global Crossing* are clearly distinguishable from the present case, the court's dicta, which practically describes the present situation, supports the Government's position, not Defendant's.

had no reasonable expectation of privacy in university computer where university computer policy, which was communicated in part via flash screen, "explains appropriate use, warns employees about the consequences of misuse, and describes how officials administer and monitor the University computer network"); *Haynes*, 2005 WL 2704965, at *4 (finding plaintiff clearly "on notice that he did not have an expectation of privacy in [his work] computer and its contents" where warning to that effect was displayed every time plaintiff logged on to his computer); *Bailey*, 272 F. Supp. 2d at 831, 836 (holding plaintiff had no reasonable expectation of privacy in work computer where computer screen displayed a warning every time plaintiff logged onto his computer that his use of computer could be monitored).

By virtue of the log-on notices, Defendant is properly charged with knowledge of the fact that any email he sent to his wife from his work computer could be read by a third party. *See Angevine*, 281 F.3d at 1135 (holding no reasonable expectation of privacy where employer's policy "clearly warned computer users [that] data [wa]s 'fairly easy to access' by third parties'"); *Muick v. Glenayre Elecs.*, 280 F.3d 741, 743 (7th Cir. 2002) (holding that any reasonable expectation of privacy employee had in his work computer was eliminated when employer announced that it could inspect the computer); *Bailey*, 272 F. Supp. 2d at 835 ("An employee cannot claim a justified expectation of privacy in computer files . . . where computer users were notified that network administrators and others were free to view data downloaded from the internet."). Thus, it is irrelevant that the Government has not established that the NYSP *actually* read Defendant's email. *See Bailey*, 272 F. Supp. 2d at 835 ("An employee cannot claim a justified expectation of privacy in computer files where the employer owns the computer; the employee uses that computer to obtain access to the internet and e-mail through the employer's

10

network; the employee was explicitly cautioned that information flowing through or stored on

computers within the network cannot be considered confidential, and where computer users were

notified that network administrators and others were free to view data downloaded from the

internet."). Here, the NYSP notified Defendant *every single time* he logged onto his computer

that he had "no legitimate expectation of privacy" with regard to his uses of the computer and

that his log on to the computer constituted consent for NYSP personnel to read or otherwise

monitor his use of the computer. (Presutti Second Decl. ¶ 5 & Ex. B.) This standard

government policy should not have come as a surprise to Defendant, himself a veteran law

enforcement official. *See Bailey*, 272 F. Supp. 2d at 836 ("Although claiming he did not

routinely read this screen notification, [defendant] knew what it said. . . . [Defendant] is an

intelligent adult who was fully capable of reading and understanding the screen banner notifying

him that his computer use could be searched by [his employer]. . . . [Defendant] offered no

credible testimony explaining his alleged belief that his computer use was private when, to

access his computer, he was required to acknowledge daily that [his employer] could monitor

and search computer activity."). Moreover, Defendant has pointed to no case law establishing

that, to be effective, such a notice would have to be verbal or that the Government would have to

disprove Defendant's self-serving assertion that he never read the notice, even though, after the

screen appeared, Defendant had to affirmatively click "OK" or hit the "Enter" key in order to

continue the log on process. *See Haynes*, 2005 WL 2704956 at *4 ("The overwhelming factor

here is the warning conveyed by plaintiff's employer to him each time he used his computer.

This warning explicitly indicated that information flowing through or stored on the computer

could not be considered confidential. . . . These various warnings clearly put plaintiff on notice

11

that he did not have an expectation of privacy in the computer and its contents. . . . This type of message has been viewed as extremely significant by the courts that have considered this issue.") (collecting cases).

In sum, the issue here is whether the notices that appeared each time Defendant logged onto his work computer sufficiently notified Defendant that any email he sent to his wife from that computer might be read by a third party. The Court finds – without hesitation – that it did. Defendant's claim that he actually did believe that the March 13, 2007 email to his wife would remain confidential therefore is entirely unreasonable. Accordingly, the Court holds that the email communication at issue is not subject to the marital communications privilege because it was not a confidential communication.[7]

---

[7]In opposing Defendant's Motion, the Government also argued that Defendant waived any privilege that may have existed by each of: (i) Defendant's printing the email and keeping it among work papers in a NYSP-owned vehicle; (ii) Defendant's filing of the email with the Clerk of Court on the publicly-accessible Electronic Case Filing system; and (iii) Defendant's delay in voicing his objection to the Government's possession and use of the email. Because the Court has determined that the email was never privileged to begin with, it is unnecessary for the Court to consider the Government's waiver arguments. Also, because the Court finds that Defendant's marital privilege was not compromised, there is no need to reach Defendant's claim of taint.

## II. Conclusion

For the reasons stated herein, Defendant's Motion is DENIED.  The Clerk of Court is respectfully directed to terminate the Motion (Docket #13).

SO ORDERED.

Dated:       February 19, 2008
             White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

13

Service List:

John P. Collins, Jr, Esq.
Assistant United States Attorney
Southern District of New York
300 Quarropas Street
White Plains, NY 10601

Kerry A. Lawrence, Esq.
Briccetti, Calhoun & Lawrence
81 Main Street, Suite 450
White Plains, NY 10601